Edwin B. Stanley, Esq., #011730
**SIMBRO & STANLEY, PLC**
8767 East Via de Commercio
Suite #103
Scottsdale, Arizona 85258-3374
(480) 607-0780
bstanley@simbroandstanley.com

Attorneys for Debtor C&H Arizona-Stucky, LLC

## IN THE UNITED STATES BANKRUPTCY COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Case No. 2:10-bk-21165-RJH |
| C & H ARIZONA-STUCKY, LLC, an Arizona limited liability company, | In Proceedings Under Chapter 11 |
| Debtor | **DISCLOSURE STATEMENT ACCOMPANYING DEBTOR'S PLAN OF REORGANIZATION DATED AUGUST 18, 2010** |

**I.**

**INTRODUCTION**

**C & H ARIZONA-STUCKY, LLC**, an Arizona limited liability company(the "Debtor") filed its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 7, 2010 (the "Petition Date"). Pursuant to §§1107 and 1108 of the Bankruptcy Code, the Debtor is managing its assets and operating its business as Debtor-in-Possession.

The Debtor is the owner and current operator of a 113,071 square feet retail shopping center located at 15440 North Scottsdale Road, Scottsdale, Arizona 85254.(the "Real Property.") The entirety of the Real Property is currently leased to Robb & Stucky, LTD as a free standing furniture store. This Disclosure Statement pertains to and concerns the Debtor's proposed Reorganization Plan under Chapter 11 of the Bankruptcy Code.

The Debtor has prepared this Disclosure Statement ("Disclosure Statement") in connection with the solicitation of acceptances for the *"Debtor's Plan of Reorganization Dated August 18, 2010"* (the

"Plan"). The information provided in this Disclosure Statement is provided solely by the Debtor, unless otherwise indicated. A copy of the Plan is attached as **Exhibit "1"** to this Disclosure Statement and is incorporated herein by this reference.

Capitalized terms used in this Disclosure Statement have the same meanings ascribed to those terms in the Plan and the Bankruptcy Code. Terms defined in this Disclosure Statement that are also defined in the Plan are defined herein solely for convenience, and the Debtor does not intend to change the definitions of those terms from the Plan. If there is any inconsistency between the Plan and this Disclosure Statement, the Plan is, and will be, controlling.

**A.** **Information Regarding the Plan and Disclosure Statement.**

The objective of a Chapter 11 case is the confirmation (*i.e.,* approval by the Bankruptcy Court) of a plan of reorganization. A plan describes in detail the means for satisfying the Claims against and Equity Interests in a debtor. After a plan has been filed, the holders of such Allowed Claims and allowed Equity Interests are permitted to vote to accept or reject the plan. Before a proponent can solicit acceptances of its plan, however, Bankruptcy Code §1125 requires that the debtor prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable those parties entitled to vote on the plan to make an informed decision about whether they should accept or reject the plan.

The purpose of this Disclosure Statement is to provide sufficient information about the Debtor and the Plan to enable you to make an informed decision in exercising your right to accept or reject the Plan. Therefore, this Disclosure Statement provides relevant information about the Debtor, its property, its financial projections, and the Plan.

This Disclosure Statement will be used to solicit acceptances of the Plan only after the Bankruptcy Court has entered an order approving this Disclosure Statement. Bankruptcy Court approval of this Disclosure Statement means only that the Bankruptcy Court has found that this Disclosure Statement meets of the statutory requirements of Bankruptcy Code § 1125 to provide adequate information. Such approval by the Bankruptcy Court is not an opinion or ruling on any other merits of this Disclosure Statement, and it does not mean that the Plan has been approved,

or will be approved, by the Bankruptcy Court.

After this Disclosure Statement has been approved by the Bankruptcy Court and there has been voting on the Plan, the Bankruptcy Court will conduct a hearing on the Plan to determine whether it should be confirmed (*i.e.*, approved). At the confirmation hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code the Bankruptcy Court will also receive and consider a ballot report prepared by the Debtor which will present a tally of the votes accepting or rejecting the Plan cast by those entitled to vote. Once confirmed, the Plan is essentially a new contract between the Debtor and its Creditors and is binding upon all Creditors and other parties in interest in the Debtor's Bankruptcy Case, regardless of whether any particular Creditor voted to accept the Plan.

**THIS DISCLOSURE STATEMENT IS NOT THE PLAN. FOR THE CONVENIENCE OF CREDITORS AND HOLDERS OF INTERESTS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT. ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF. IN THE EVENT OF ANY INCONSISTENCY BETWEEN THIS DISCLOSURE STATEMENT AND THE PLAN, THE PLAN WILL CONTROL.**

**B.      Representations.**

This disclosure Statement has not been subject to a certified audit but has been prepared in part from information compiled by the Debtor from records maintained by it in the ordinary course of business or from information received by the Debtor from third parties. Every effort has been made by the Debtor to be as accurate as possible in the preparation of this Disclosure Statement

Other than stated in this Disclosure Statement, the Debtor has not authorized any representations or assurances concerning the Debtor, its operations, or the value of its assets. Therefore, in deciding whether to accept or reject the Plan, you should not rely on any information relating to the Debtor or the Plan other than that contained in this Disclosure Statement (or in the Plan itself). You should report any unauthorized representations or inducements to counsel for the Debtor, who may present such information to the Bankruptcy Court for such action as may be

appropriate.

This is the solicitation by the Debtor only and is not a solicitation by its affiliates, members, attorneys, agents, financial advisers, accountants, or any other Professionals employed by the Debtor.

## II.

## VOTING PROCEDURES AND REQUIREMENTS

### A.    Who are Entitled to Vote.

If you hold an Allowed Claim  or an Allowed Equity  Interest that is "impaired" under the Plan, you are entitled to vote to accept or reject the Plan.  Accordingly, to be entitled to vote, your Claim must be "allowed" as set forth in Bankruptcy Code § 502 or temporarily allowed as set forth in Rule 3018 (a) of the Bankruptcy Rules.  Additionally, Bankruptcy Code § 1126 (f) permits you to vote to accept or reject the Plan only if your Claim is "impaired."

### 1.    Allowed Claims.

You have an Allowed Claim if (1) you timely filed a proof of Claim in no timely objection is filed to your Claim; (2) you timely filed a proof of Claim and an objection was filed to your Claim upon which the Bankruptcy Court has ruled and allowed your Claim; (3) your Plan has been listed by the Debtor in its Bankruptcy Schedules as liquidated in amount and undisputed and no objection has been filed to your Claim; or (4) your Claim is listed by the Debtor in its Bankruptcy Schedules, including any amendments thereto, as liquidated in amount and undisputed and an objection was filed to your Claim upon which the Bankruptcy Court has ruled and allowed your Claim.  If your Claim is not an Allowed Claim, it is a Disputed Claim.  You will not be entitled to vote on the Plan unless and until the Bankruptcy Court temporarily or provisionally allows or estimates  your Claim for voting purposes pursuant to Bankruptcy Rule 3018.  If you are uncertain regarding the status of your Claim, you should check the Bankruptcy Court records carefully, including the Debtor's Bankruptcy Schedules and any amendments thereto.  You should seek appropriate legal advice if you have any dispute with the Debtor about your Claim.  The Debtor and the Debtor's Professionals cannot advise you about such matters.

**2.       Impaired Claims and Interests.**

Claims and Interests are "impaired" when the full amounts of the Allowed Claims or Interests will not be paid under the Plan, or when the holders' legal, equitable, or contractual rights are otherwise altered in any manner by the Plan.  The Plan specifically provides with respect to each Class of Claims or Interests, either that such Class is unimpaired or that the holder of a Claim or Interest in such Class is to receive specified consideration.  Holders of Claims and Interests which are not "impaired" under the Plan are deemed to have accepted the Plan pursuant to Bankruptcy Code § 1126 (f), and their acceptances of the Plan need not be solicited.  If you will receive no distribution under the Plan on account of your Claim or Interest, then pursuant to Bankruptcy Code § 1126 (g), your Class will be deemed to have rejected the Plan without the need to vote.

**B.       Procedures for Voting.**

**1.       Submission of Ballots.**

After this Disclosure Statement has been approved by the Bankruptcy Court, all Creditors and holders of Interests whose votes are solicited (as explained in Article II.A. above) will be sent (1) a ballot, together with instructions for voting (the "Ballot"); (2) a copy of this Disclosure Statement as approved by the Bankruptcy Court; and (3) a copy of the Plan.  You should read the Ballot carefully and follow the instructions contained therein.  Please use only the Ballot sent with this Disclosure Statement.  You should complete your Ballot and return it to:

**SIMBRO & STANLEY, PLC**
Attention: Edwin B. Stanley, Esq.
8767 E. Via de Commercio
Suite No. 103
Phoenix Arizona 85258-3374
Phone Number: (480) 607-0780
bstanley@simbroandstanley.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED AT THE ADDRESS LISTED ABOVE BY 5:00 PM, MOUNTAIN STANDARD TIME, ON_____, 2010.  IF YOUR BALLOT IS NOT TIMELY RECEIVED, IT WILL NOT BE COUNTED IN DETERMINING WHETHER THE PLAN HAS**

**BEEN ACCEPTED OR REJECTED.**

**2.     Procedures for Vote Tabulation.**

In determining whether the Plan has been accepted or rejected, any Ballot timely received that (1) contains  sufficient information to permit the identification of the claimant and the Class in which the claimant is voting, (2) is signed by the claimant or an authorized agent, and (3) is cast as an acceptance or rejection of the Plan, will be counted.  The following Ballots will not be counted in determining whether the Plan has been accepted or rejected: (a) any Ballot received after the voting deadline as set by the Bankruptcy Court; (b) a Ballot that is not signed or that contains insufficient information for the identification of the claimant or the Class in which the claimant is voting; (c) any Ballot timely received that indicates neither an acceptance nor a rejection of the Plan; (d) any Ballot timely received that indicates both an acceptance and a rejection of the Plan; (e) any Ballot cast by: (1) a  Creditor or Interest holder who is not listed as a Creditor or Equity Interest holder on the Debtor's Bankruptcy Schedules or whose Claim or Equity Interest is listed as disputed, contingent, or unliquidated, and who has not timely filed a proof of Claim or Interest with respect to the Claim or Interest being voted, or (2) a Creditor or Interest holder who has timely filed a proof of Claim or Interest which is the subject of an objection and who has not obtained the temporary allowance of its Claim for voting purposes; and (f) any Ballot cast by a Person who does not hold a Claim or Interest in the Class in which it voted.

**3.     Withdrawal of Ballots.**

A Ballot may not be withdrawn or changed after it is cast unless the Bankruptcy Court permits you to do so, after notice and a hearing to determine whether sufficient cause exists to permit the change.

**C.     Summary of Voting Requirements.**

In order for the Plan to be confirmed, the Plan must be accepted by at least one (1) impaired Class of Claims.  For a Class of Claims to accept the Plan, votes representing at least two-thirds (2/3) in Claim amount and a majority in number of the Claims voted in that Class

(not including votes of Insiders) must be cast to accept the Plan.  For a Class of Interests to vote to accept the Plan, votes representing at least two-thirds (2/3) of the outstanding Interests in each Class which are voted must be cast for acceptance of the Plan.  The Debtor is seeking acceptances from holders of Allowed Claims and Allowed Interests in the following Classes which are or may be "impaired" under the Plan;[1] provided, however, that the Debtor will have the right to supplement this Disclosure Statement as to any other impaired Classes, if any:

| | |
|---|---|
| Class 2 | Secured Claim of MSD |
| Class 3 | General Unsecured Claims |

**IT IS IMPORTANT THAT HOLDERS OF ALLOWED IMPAIRED CLAIMS AND INTERESTS EXERCISE THEIR RIGHTS TO VOTE TO ACCEPT OR REJECT THE PLAN.  THE DEBTOR ASSERTS THAT THE TREATMENT OF CREDITORS UNDER THE PLAN IS THE BEST ALTERNATIVE FOR CREDITORS, AND THE DEBTOR RECOMMENDS THAT THE HOLDERS OF ALLOWED CLAIMS AND INTERESTS VOTE IN FAVOR OF THE PLAN.**

The specific treatment of each Class under the Plan is described in the Plan and is summarized in Article IV of this Disclosure Statement.

## III.

## GENERAL INFORMATION AND BACKGROUND

**A.**     **Description of the Debtor.**

**1.**     **Ownership of the Debtor.**

The Debtor is a privately held Arizona limited liability company whose sole asset is the

---

[1]     Any Classes of Creditors or holders of Interests whose Claims or Interests are not impaired under the Plan are deemed to have accepted the Plan pursuant to bankruptcy Code § 1126 (f), and the Debtor is not soliciting votes from such Creditors or holders of Interests.  Similarly, any Classes of Claims or Interests that are receiving nothing under the Plan are deemed to have rejected the Plan pursuant to bankruptcy code § 1126 (g), and the Debtor is not soliciting votes from such Creditors or holders of Interests.

Real Property.  C&H Development Co. is the Managing Member of the Debtor and is the holder of 100% of the Interests.

### 2.   History of the Debtor.

The Debtor was formed on June 14, 1999, for the specific purpose of holding the Real Property.  In September of 1999 the Debtor executed a series of agreements with John Hancock Real Estate Finance, Inc. (the predecessor in interest to MSD)wherein John Hancock loaned funds to the Debtor for the purchase of the Real Property from C&H Development Co as part of an IRS Code §1031 exchange.  The Real Property and has been fully leased to Robb & Stucky, Ltd.  since May 16, 1996.  The MSD Secured Claim fully matured in November of 2009, but the Debtor was unable to either refinance the obligation or negotiate an extension with MSD. As a result, on April 5, 2010, MSD commenced a non-judicial trustee's sale of the Real Property, which was to have occurred on July 13, 2010.  MSD's trustee's sale was stayed by the Debtor's bankruptcy filing.

### 3.   Business Operations of the Debtor.

Prior to the Petition Date, the Debtor was engaged in the business of operating the Real Property.  The Real Property was recently  appraised by Integra Realty Resources.  These experts opined that as of January 19, 2010, the Real Property had as "as is" value of $17,100,000.00, and a "go dark" value (assuming that the Robb & Stucky Lease was terminated) of $12,900,000.00.  The Debtor has ordered an update of this appraisal.  As of the Petition Date, the Real Property was 100% leased and the Debtor was collecting rental income from Robb & Stucky. Attached hereto as **Exhibit "2"** are copies of the Debtor's profit and loss statements for the one year period preceding the Petition Date.

### B.   Prepetition and Postpetition Management of the Debtor.

As of the Petition Date and continuing through the date of this Disclosure Statement, the Managing Member of the Debtor was, and is, C&H Development Co.  C&H Development Co. is the Debtor's sole member.  The shareholders and officers of C&H Development Co. are:

| Name | Title | Percent of Ownership |
|------|-------|----------------------|

| Basil Christopoulos | Pres., CEO | 14.9% |
| Constantine Christopoulos | VP, Sec., Treas | 70.2% |
| Jeanie Christopoulos | Asst. Sec. | 0% |
| Eleni Gianopulos | Director | 14.9% |

**C.  Litigation Involving the Debtor.**

As of the Petition Date, the Debtor was not involved in any litigation.

**D.  Significant Events Precipitating the Bankruptcy Filing.**

The most significant event that precipitated the Debtor's Bankruptcy filing was the filing of the maturation of the MSD Secured Claim, the negotiations to extend or refinance the MSD Secured Claim, and MSD's commencement of a trustee's sale of the Real Property.

**E.  Significant Events During the Bankruptcy Case.**

**1.  Employment of Bankruptcy Professionals for the Debtor.**

As of the date of this Disclosure Statement, the Debtor has employed, with the approval of the Bankruptcy Court, the law firm of Simbro & Stanley, PLC, and the real estate appraisal firm of Integra Realty Advisors, LLC.

**2.  Authority to Use Cash Collateral.**

As of the date of this Disclosure Statement, the Debtor is negotiating with MSD for the authority to use the rents paid by Robb & Stucky for specific purposes related to the preservation of the Real Property (primarily real property taxes and insurance).  Robb & Stucky, in addition to its rental obligations, pays all real property taxes and maintains the Real Property, so the Debtor's cash collateral requirements are minimal.  Since the Petition Date, the Debtor has received approval from MSD for payment of certain expenses necessary to the preservation of the Real Property, such as insurance and rental taxes.

**IV.**

**DESCRIPTION OF PLAN OF REORGANIZATION**

The following description of the Plan is for informational purposes only and does not

purport to change or supersede any of the specific contractual language of the Plan.  Each holder of a Claim or Interest is urged to read the Plan carefully with respect to the Debtor's proposed treatment of their respective Claim or Interest, and, if necessary, to consult with legal counsel to understand the Plan fully.  The Plan, if confirmed, will be binding upon the Debtor, the Creditors, in any holders of Interests.  **IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE PLAN IN THIS DISCLOSURE STATEMENT, THE PLAN WILL CONTROL.**

The Plan provides that the MSD Secured Claim will be paid in full over a five year period. The MSD Secured Claim will be re-amortized and paid in full on the fifth anniversary of the Effective Date.  General unsecured claims will be paid in full,  with interest, in two installments. The first installment of 50% of the principal and all accrued interest will be paid on the Effective Date.  The second installment of all remaining principal and all accrued interest will be pad six months after the Effective Date.  Administrative Convenience Claims (claims of $9,000.00 or less) will be paid in full on the Effective Date.

It is difficult for the Debtor to predict with certainty when the Effective Date of the Plan will occur; but the Debtor estimates that the Effective Date of the Plan will occur no later than October 30, 2010, and that the Plan will be fully performed by the fifth anniversary of the Effective Date.  The Bankruptcy Court has scheduled a Confirmation Hearing on_____, 2010, at_____, ___.m.

**A.      Classification and Treatment of Claims and Interest Under the Plan.**

Bankruptcy Code § 1123 requires that the proponent of a plan of reorganization classify claims of the debtor's creditors in the interests of the debtor's equity holders.  The Plan divides the Debtor's Creditors and Interest holders into seven separate Classes that the Debtor believes are in compliance with the Bankruptcy Code, plus additional subclasses where appropriate.  The Plan further  sets forth the treatment afforded to each Class.  The actual number of members in each Class and the amount of Claims and/or Interests under the confirmed Plan will depend upon any subsequently filed proofs of Client and/or Interest and any objections thereto that

may be pursued by a party in interest.

All Claims and Interests are classified under the Plan as hereinafter stated in this Article IV; provided, however, any Claim or Interest will be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of the Class and will be deemed classified in a different Class to the extent that any remainder of the Claim or Interest qualifies within the description of a different Class. As of the Confirmation Hearing, any Class of Claims which does not contain any Creditor's Claims will be deemed deleted automatically from the Plan; and any Class of Claims that does not contain an Allowed Claim (or a Claim temporarily or provisionally allowed by the Bankruptcy Court for voting purposes) will be deemed automatically deleted from the Plan with respect to voting on confirmation of the Plan.

The Plan classifies the Claims against and the Interests in the Debtor as follows:

<u>Unclassified: Administrative Claims:</u>

This Class consists of all Allowed Claims entitled to priority under §507(a)(1) of the Bankruptcy Code, including Professional Fees. The Debtor estimates that the aggregate amount of Allowed Administrative Claims that will be approximately $25,000.00 or less ( after crediting all retainers paid to the Chapter 11 Professionals and taking into account any prior payments of interim compensation of fees and reimbursement of expenses), which consists primarily of the fees and expenses of the Chapter 11 Professionals. Allowed Administrative Claims will be paid in full on the Effective Date from the Effective Date Cash. Administrative Claims are unimpaired and are deemed to have accepted the Plan. Holders of Allowed Administrative Claims are not entitled to vote on the Plan.

<u>Treatment of Class 1 Priority Tax Claims</u>. Unless otherwise agreed by the Debtor and the holder of such Claims, each Allowed Priority Tax Claim in Class 4 will be paid in full, without interest, pursuant to Bankruptcy Code §1129(a)(9) in Cash upon the later to occur of (a) the Effective Date, or as soon as practicable thereafter, or (b) the tenth (10th) Business Day after such Claim becomes an Allowed Claim. Class 1 is not impaired and holders of Allowed Claims in Class 1 are not entitled to vote on the Plan. The Debtor does not believe that

there are any claims in Class 1.

Treatment of Class 2: MSD Secured Claim.  When and to the extent that the MSD Secured Claim becomes an Allowed claim, the MSD Secured Claim will be treated as follows:

A.    MSD will retain its lien on all collateral in with the same validity and priority as existed prior to the Petition Date.

B.    Beginning on the first day of the first calendar month following the Effective Date, and on the first day of each calendar month thereafter until the fifth anniversary of the Effective Date, MSD will receive a principal payment in the amount sufficient to amortize the Allowed MSD Secured Claim over a 360 month period with interest at the rate of 4% per annum.

C.    The entire remaining Allowed MSD Secured Claim will be paid in full on the fifth anniversary of the Effective Date.

D.    Except as set forth in this Plan, all other terms and conditions of the documents evidencing the MSD Secured Claim will remain unaffected.

The MSD Secured Claim is impaired and MSD is entitled to vote to accept or reject the Plan.

Treatment of Class 3: General Unsecured Claims.  Holders of Class 3 General Unsecured to the extent they are Allowed Claims, shall each receive payment in full of their Allowed Claims, with interest at the rate of 10% per annum, compounded monthly, in two installments.  The first installment of 50% of principal and all accrued interest shall be paid on the Effective Date. The second installment of all remaining principal and interest shall be paid on that date that is six months after the Effective Date. Class 3 General Unsecured Creditors are impaired and are entitled to vote to accept or reject the Plan.

Treatment of Class 3(a): Administrative Convenience Claims.    Holders of Class 3(a) Administrative Convenience Claims, to the extent they are Allowed Claims, will be paid in full on the Effective Date.  Class 3(a) is not impaired and holders of Allowed Class 3(a) claims, and holders of Allowed Claims that elect to reduce their Allowed General Unsecured Claim to

$9,000.00 or less, are not impaired and holders of Class 3(a) Administrative Convenience Claims are not entitled to vote on the Plan.

Treatment of Class 4: Equity Interests.    Holders of Equity Interests shall retain their interests in the Reorganized Debtor.  Equity Interests are not impaired and holders of Equity Interests are deemed to have accepted the Plan.

**B.    Summary of other Provisions of the Plan.**

**1.    Executory Contracts and Unexpired Leases.**

The Bankruptcy Code gives the Debtor the power, subject to the approval of the Bankruptcy Court, to assume and/or assign or reject executory contracts and unexpired leases. Rejection or assumption/assignment  may be effected either pursuant to a plan of reorganization or by order of the Bankruptcy Court entered upon application of the Debtor after notice and a hearing.  The Plan provides that, prior to the Confirmation Hearing, the Debtor will file one or more motions identifying the Executory Contracts and Unexpired Leases  that it intends to assume/assign  or reject.  Such motions and the Bankruptcy Court's orders thereon will be deemed incorporated into the Plan.  Except as otherwise provided in Plan, if the Debtor fails to assume or reject an Executory Contract or Unexpired Lease prior to the Confirmation Hearing, such Executory Contract or Unexpired Lease will be deemed rejected.  If the Debtor assumes an Executory Contract or Unexpired Lease under which there is a monetary default, the Debtor is required pursuant to the Bankruptcy Code to cure promptly, or  provide adequate assurance that it will cure promptly, any existing monetary defaults.

If any Executory Contract or Unexpired Lease is rejected, the other party to the contract or lease may file a claim for damages incurred by reason of the rejection.  Every Claim asserted by a Creditor arising from the rejection of an Executory Contract pursuant to the Plan must be filed with the Bankruptcy Court no later than twenty (20) days after the entry of the Confirmation Order.  If such a Claim is timely filed, it will be treated as a Class 3 Unsecured Claim when it becomes an Allowed Claim.  If such a Claim is not timely filed, it will be barred, and the Creditor holding the Claim will not receive or be entitled to any distribution under the

Plan on account of such Claim.

The Debtor's only executory contract is the Robb & Stucky Lease. Either prior to the Confirmation Hearing or in conjunction with the Confirmation Hearing, the Debtor will move for an order allowing the Debtor to assume the lease with Robb & Stucky. Notwithstanding this assumption, the Debtor will retain all rights to collect unpaid and due rent, rent deferrals, penalties and other amounts due and to become due under the Robb & Stucky Lease.

**2.**     **Retention and Enforcement of Claims, Demands, and Causes of Action.**

Except as specifically provided in the Plan, the Reorganized Debtor will control and pursue all Causes of Action belonging to the Debtor or its Estate; and no provision of the Plan will impair the rights of the Reorganized Debtor (or assignee thereof) with respect to such Causes of Action to prosecute or defend against any such preserved Causes of Action. Pursuant to Bankruptcy Code §1123(b)(3) and except as otherwise provided in Plan, the Reorganized Debtor, as successor to the Debtor, will have the exclusive right, subject to the Bankruptcy Court ordering otherwise, to pursue, prosecute, enforce, abandoned, settle, compromise, release, or otherwise dispose of any and all Causes of Action against any Person. All rights of the Debtor that arose before or after the Petition Date, including, but not limited to, all avoidance powers granted to the Debtor under the Bankruptcy Code and all causes of action and remedies granted pursuant to Bankruptcy Code § § 542,544,545,547,548,550, 551,553, and 554, shall be transferred to the Reorganized Debtor. In addition, the Debtor shall retain all causes of action against Robb & Stucky that have accrued or which will accrue under the Robb & Stucky Lease.

**3.**     **Administrative Claims Bar Date.**

All requests for payment of administrative costs and expenses incurred prior to the Effective Date pursuant to Bankruptcy Code §§507(a)(1) or 503 (b) shall be served and filed with the Bankruptcy Court no later than twenty (20) days after the entry of the Confirmation Order. Any such Claim that is not served and filed within this time shall be forever barred.

**4.**     **Retention of Jurisdiction.**

The Plan provides for the retention of jurisdiction by the Bankruptcy Court over certain

aspects of the Debtor's Chapter 11 case. Notwithstanding confirmation of the Plan, the Bankruptcy Court will retain jurisdiction for the following purposes:

     a.     Claims allowance and payment.

     b.     Plan disputes and enforcement.

     c.     Discharge.

     d.     Adjudication of any and all "core proceedings" under 28 U.S.C. §157(b).

     e.     Entry of a final decree.

     f.     Assumption/assignment or rejection of Executory Contracts and Unexpired Leases and any and all Claims arising therefrom.

**5.**     **Amendment to the Plan.**

The Debtor may seek to amend or modify the Plan from time to time in accordance with, and pursuant to, Bankruptcy Code §1127. Such amendment or modification may be undertaken as a result of objections to the Plan, as a result of any other matter that may affect the ability to obtain a Confirmation Order or if, for any other reason that cannot be foreseen that the present time, such amendment or modification is determined by the Debtor to be in the best interests of the Estate. The potential effect of any such amendment or modification on the holders of Claims and Interests cannot be foreseen, but may include a change in the economic effect of the Plan on all or some of the Classes or a change in the relative rights of such Classes. If any such change materially and adversely affects the treatment of any Class of Claims or Interests, the members of such Class will be entitled to withdraw any votes previously cast for or against the Plan. The Debtor may, prior to confirmation, find it advisable or necessary to amend the Plan's classification and treatment of one or more Classes under the Plan. If these amendments do not materially and adversely change the treatment of the other Classes, amendments may be approved by the Bankruptcy Court at the Confirmation Hearing without entitling the members of any Classes whose treatment is not adversely change to withdraw any votes previously cast for or against the Plan.

**6.**     **Withdrawal of the Plan.**

The Debtor has reserved the right to withdraw or revoke the Plan at any time prior to entry of the Confirmation Order.

**7.  Barred Claims.**

Subject to the provisions of the Plan regarding Unexpired Leases and Executory Contracts and  the exceptions in Bankruptcy Rule 3003(b) for Claims and Interests  deemed filed, any Claim that has not been filed before any Claims bar date established by the Bankruptcy Court,  and unless otherwise agreed by the Debtor or otherwise ordered  by the Bankruptcy Court, will be forever waived and discharged.  Nothing in the Plan is intended to affect or modify any Claim or any other right that any holder of a Claim against or Interest in the Debtor may have against any other Person.

**8.  Time of Performance Under the Plan (Effective Date).**

The "Effective Date" of the Plan determined when the performance of many of the obligations under the Plan are due.  The Debtor cannot predict with any certainty when the Effective Date will occur because, among other things, the timing will be affected by the pace and timing of the Plan confirmation process.  However, the Debtor believes that the Effective Date will occur no later than October 30, 2010.

**9.  Provisions Regarding Distributions Under the Plan.**

No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims.  If a Claim is subject to an objection, the Claim will be treated as a Disputed Claim until the objection has been settled or fully adjudicated, although the Bankruptcy Court may estimate and  temporarily allow the Disputed Claim for purposes of voting on the Plan.

If a Claim is not an Allowed Claim by or on the Effective Date, payment on the Allowed Claim will commence when the Claim becomes any Allowed Claim.  Distributions on Claims that become Allowed Claims after the Effective Date will be made on the next date for distribution under the Plan.

**10.  Unclaimed Property.**

Except as otherwise provided in the Plan, in the event that any distributions are returned unclaimed, the Reorganized Debtor shall hold the unclaimed distributions for sixty (60) days and thereafter the unclaimed distribution shall become an asset of the Reorganized Debtor.

**11.     Successors and Assigns.**

The rights and obligations of any holder of a Claim or Interest referred to in the Plan will bind inure to the benefit of that holder's successors, assigns, heirs, devisees, executors and personal representatives.

**12.     Severability and Reformation.**

The Plan provides that if any provision of the Plan is found by the Bankruptcy Court to be invalid, illegal, or unenforceable or if the Plan is found by the Bankruptcy Court to be invalid, illegal or unenforceable,  or if the Plan is not confirmable pursuant to Bankruptcy Code §1129, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter or interpret such term to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held invalid, illegal, or unenforceable.  Such term or provision shall be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as its may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.     Limitation of Liability and Discharge.**

The Plan provides for a limitation of liability of certain parties in connection with actions that they have taken in the Bankruptcy Case.  Specifically, neither the Debtor, nor any of its Professionals, officers, directors, employees, advisers, attorneys, agents, or members will have or incur any liability to any holder of a Claim or Interest or any of their respective agents, employees, representatives, financial advisers, attorneys, or any of their respective successors or assigns, for any act, event, or omission occurring on or after the Petition Date, and which directly relates to or arises out of their conduct or action taken with respect to the Chapter 11 Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the

administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, and in all respects such parties will be entitled to reasonably rely upon advice of counsel with respect to their duties and responsibilities under the Plan or in the context of the Bankruptcy Case.

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder of a Claim and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by Bankruptcy Code §1141, of and from any and all Claims, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to Bankruptcy Code §524 from prosecuting or asserting any such discharged Claim against the Debtor. Notwithstanding any provision of this Plan to the contrary, any valid setoff or recoupment rights held by the Debtor shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

## V.

## MEANS OF EXECUTION OF THE PLAN.

The means for execution of the Plan are and will be as follows:

### A. Assumption of the Robb & Stucky Lease.

The Robb & Stucky Lease will be assumed either pursuant to the Plan or pursuant to a motion filed prior to the Confirmation Hearing. The Robb & Stucky lease will, among other things, provide the Debtor with sufficient income to pay the monthly payments due to MSD and all unsecured creditors, as well as providing for the maintenance of the Real Property and the payment of all accruing real property taxes. The Robb & Stucky Lease will also maintain the Real Property value by keeping the Real Property income producing for an extended period of time. This additional value will make it easier to sell or refinance the MSD Secured Claim five years after the Effective Date. Attached hereto as **Exhibit "3"** are projections of the Debtor's income and expenses for the two year period following October 31, 2010.

### B.    Vesting of Property.

Pursuant to Bankruptcy Code §§541(a) and 1141(b), all Estate assets and Causes of Action shall vest in the Reorganized Debtor free and clear of all liens, claims, encumbrances and interest, except to the extent of Allowed Claims pursuant to the terms specified in the Plan.

### C.    Post-Confirmation Litigation.

All Causes of Action shall be retained and preserved for the benefit of the Reorganized Debtor and the holders of Allowed Claims.  The Reorganized Debtor shall have the sole authority to prosecute any and all Causes of Action, and will do so in accordance with Bankruptcy Code §1123(b) (3)(B).  All net proceeds of monetary judgments, settlements and awards resulting from the settlement or prosecution of the preserved Causes of Action shall be utilized by the Reorganized Debtor in its business operations or distributed to the holders of Allowed Claims in Class 6, after deduction of the  reasonable and necessary fees and costs incurred by the Reorganized Debtor in the prosecution and/or settlement of the Causes of Action, all at the discretion of the Reorganized Debtor, and as  approved by the Bankruptcy Court pursuant to Bankruptcy Rule 9019.   At this time, the Debtor does not anticipate that there will be any post confirmation litigation with any party except the Debtor may enter into post confirmation litigation with  Robb & Stucky.

### D.    Payments and Distributions Effective on Tender.

Whenever the Plan requires a payment to be made on behalf of an Allowed Claim, or an issuance and distribution of stock in the Reorganized Debtor on behalf of an Allowed Claim, such payment or distribution will be deemed made and effective upon tender thereof by the Reorganized Debtor to the Creditor to which payment or distribution is due. A monetary tender will be effective when and if made in Cash.  The tender of stock in the Reorganized Debtor will be effective when a stock certificate in the Reorganized Debtor is sent to the Creditor.  If any Creditor refuses such tender, the amount tendered and refused will be held by the Reorganized Debtor for the benefit of that Creditor pending final adjudication of any dispute.  However, when the dispute is finally adjudicated  and the Creditor receives the funds or stock previously

tendered and refused, the Creditor will be obligated to apply the funds and/or stock in accordance with the Plan as of the date of the original tender; and while a dispute is pending and after adjudication thereof, the Creditor will not have the right to any interest or other charges or to exercise any other rights that would be enforceable by the Creditor if the Reorganized Debtor had failed to pay the tendered payment or distribution.

## VI.

## CONFIRMATION OF THE PLAN.

### A.  Confirmation Hearing.

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the "Confirmation Hearing").  The Confirmation Hearing will be held at the United States Bankruptcy Court, 230 North First Avenue, Hearing Room _____, Phoenix, Arizona, commencing on_____, 2010 at_____, ____.m. **THE CONFIRMATION HEARING MAY THE ADJOURNED FROM TIME TO TIME BY THE BANKRUPTCY COURT WITHOUT FURTHER NOTICE EXCEPT FOR AN ANNOUNCEMENT MADE AT THE CONFIRMATION HEARING**.

### B.  Objections to Confirmation.

Bankruptcy code §1128 (b) provides that any party in interest may object to confirmation of the Plan, regardless of whether it is entitled to vote.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.  **UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY AND PROPERLY MADE, IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT**.  The Plan is binding on all Creditors and parties in interest who do not (1) timely file an objection with the Bankruptcy Court, with a copy served on the Debtor; (2) comply with all requirements of the Bankruptcy Code and the Bankruptcy Rules regarding such objections; (3) appear in person, together with witnesses and any other evidence, unless otherwise ordered by the Bankruptcy Court, at the Confirmation Hearing; and (4) comply with any scheduling order issued by the Bankruptcy Court, including complying with any briefing requirements and required disclosures of witnesses and exhibits.  All

objections to confirmation of the Plan must be filed with the Bankruptcy Court in served on the Debtor's counsel at the address set forth above, of this Disclosure Statement, on or before_____, 2010.

**C.    Requirements for Confirmation of the Plan**.

At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Bankruptcy Code §1129(a) have been satisfied, in which event the Bankruptcy Court will enter a Confirmation Order.  Such requirements include, among others:

- That the Debtor has complied with the applicable provisions of Chapter 11, including the provisions of Bankruptcy code §§1122 and 1123 governing classification of claims and interest and contents of the plan of reorganization.

- That the Debtor has proposed the Plan in good faith and not by any means forbidden by law.

- That any payment or distribution made or promised by the Debtor to any Person for services, costs, or expenses in connection with the Bankruptcy Case or the Plan has been approved by or is subject to approval by the Bankruptcy Court as reasonable.

- That the Debtor has disclosed the identity and affiliations of Persons proposed to serve as officers after confirmation.

- That one or more of the impaired Classes of Claims has voted to accept the Plan.

- That the Plan is in the best interests of the holders of Claims in Interests; that is, each holder of an Allowed Claim for Allowed Interest either has accepted the Plan will receive on account of its Claim or Interest property with a value, as of the Effective Date, that is not less than the amount that the holder of such Claim or Interest would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

- That the Plan is feasible; that is, since the Plan is a reorganization plan, confirmation is not likely to be followed by the need for subsequent liquidation or

further reorganization of the Reorganized Debtor.

The Debtor believes that the Plan satisfies all applicable requirements of Bankruptcy Code § 1129(a), as well as all other applicable provisions of the Bankruptcy Code.

**1.** **Best Interests Test and Liquidation Analysis.**

Under the best interests test, the Plan is comfortable if, with respect to each impaired Class of Claims or Interests, each holder of an Allowed Claim or Allowed Interest in such Class either: (1) has accepted the Plan; or (2) will receive or retain under the Plan, on account of its Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount such holder would receive or retain if the Debtor were to be liquidated under Chapter 7 of the Bankruptcy Code. The Plan provides for the payment of all Creditors in full. The Plan satisfies the bests interests test.

**2.** **Feasibility of the Plan.**

Bankruptcy Code §1129(a)(11) includes what is commonly described as the "feasibility" standard. In order for the Plan to be confirmed, the Bankruptcy Court must also determine that the Plan is feasible; that is, that the need for further reorganization or a subsequent liquidation of the Reorganized Debtor is not likely to result following confirmation of the Plan. The Debtor believes that the Reorganized Debtor will be able to achieve the results set forth in these projections, absent unforeseen circumstances and any risk factors discussed in this Disclosure Statement. The pro forma income and expense projections (Exhibit "3" hereto) demonstrate that the Plan is feasible. Moreover, because the value of the Real Property greatly exceeds the MSD Secured Claim and all Unsecured Claims, the Real Property can be sold and all creditors satisfied upon sale.

**3.** **Effective Date Cash and Net Available for Distribution.**

The Cash necessary to pay the Effective Date Payments will come from post Effective Date rent collected on the Real Property. Shortly after the Effective Date of the Plan, the Debtor will be required to provide for full payment of all Allowed Administrative Claims, all Class 1 Allowed Claims (which the Debtor estimates as zero), 50% of all Allowed Class 3 general

unsecured claims, and all Allowed Class 3(a) Administrative Convenience claims (which the Debtor estimates as $10,000 or less).    The Debtor believes that it will have sufficient Cash on the Effective date to satisfy all necessary payments that are due on the Effective Date.

### 4. <u>Acceptance by an Impaired Class.</u>

Because the Plan impairs some Classes of Claims, Bankruptcy Code § 1129 (a) (10) requires that for the Plan to be confirmed, at least one impaired Class must accept the Plan by the requisite vote without counting the votes of any "insiders" (as that term is defined in Bankruptcy Code § 101(31)) contained in that Class.  The Debtor believes that at least one impaired Class will vote to accept the Plan.

### 5. <u>Confirmation Under § 1129 (b) of the Bankruptcy Code-"Cramdown"</u>

Although Bankruptcy code §1129(a)(8) requires that the Plan be accepted by each Class that is impaired under the Plan, Bankruptcy Code §1129(b) provides that the Bankruptcy Court may still confirm the Plan at the request of the Debtor if all requirements of Bankruptcy code §1129(a) are met except for §1129(a)(8) and if, with respect to each Class of Claims or Interests that (a) is impaired under the Plan, and (b) has not voted to accept the Plan, the Plan "does not discriminate unfairly," and is "fair and equitable."  This provision is commonly referred to as a "cramdown."  In the event an impaired Class of Claims or Interests does not accept  the Plan, the Debtor has requested cramdown confirmation of the Plan with respect to any such nonaccepting Class.  The Debtor believes that, with respect to such Class or Classes, the Plan meets the requirements of Bankruptcy Code §1129(b).

### a. <u>Unfair Discrimination.</u>

A plan of reorganization "does not discriminate unfairly" if: (1) the legal rights of a nonaccepting class are treated in a manner that is  consistent with the treatment of other classes whose legal rights are related to those of the non accepting class ; and (2) no class receives payments in excess of that which it is legally entitled to receive on account of its claims or interests.  The Debtor asserts that under the Plan: (a) all Classes of impaired Claims are being treated in a manner which is consistent with the treatment of other similar Classes of Claims and

Interests; and (b) no Class of Claims or Interests will receive payments or property with an aggregate value greater than the sum of the Allowed Claims or the Allowed Interests in the Class. Accordingly, the Debtor believes that the Plan does not discriminate unfairly as to any impaired Class of Claims or Interests.

**b.** **Fair and Equitable Test.**

The Bankruptcy Code establishes different "fair and equitable" test for Secured Creditors, Unsecured Creditors, and holders of Interests, as follows:

**1.** **Secured Creditors.**

With respect to a Secured Claim, "fair and equitable" means that a plan provides that either (1) the holder of the secured claim in an impaired class retains the liens securing such claim, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the amount of such allowed claim; and that the holder of such claim receives on account of such claim deferred cash payments totaling at least the amount of such allowed claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property; (2) for the sale, subject to Bankruptcy Code §363(k), of any property that is subject to the liens securing such claim, free and clear of such liens, with such liens to attached to the proceeds of such sale, and the treatment of such liens as set forth in clause (1) of this subsection; or (3) the realization by such holder of the "indubitable equivalent" of such claim. The Plan provides fair and equitable treatment to all secured creditors.

**2.** **Unsecured Creditors.**

With respect to any unsecured claim, "fair and equitable" means that a plan provides that either (1) each impaired unsecured creditor receives or retains property of a value, as of the effective date, equal to the amount of its allowed claim; or (2) the holders of claims and interests that are junior to the claims of the dissenting class will not receive or retain any property under the plan. Unsecured creditors will be paid in full, with interests. The Plan provides fair and equitable treatment to holders of Allowed Unsecured Claims.

### 3. Interest Holders.

With respect to holders of equity interests, "fair and equitable" needs that a plan provides that either (1) each holder will receive or retain under the plan property of a value, as of the effective date of the plan, equal to the greater of: (a) be fixed liquidation preference or redemption price, if any, of such interest; or (b) the holders of interest which are junior to the claims of the dissenting class will not receive any property under the plan.

The Plan complies with the claims priority established by the Bankruptcy Code. Holders of Allowed Interests will retain their interests, but all creditors will be paid in full, with interest.

### VII

### TAX CONSEQUENCES OF THE PLAN

Each holder of a Claim or Interest is strongly urged to consult with its own tax adviser regarding the federal, state and local tax consequences of the Plan. The implications regarding tax consequences in this Disclosure Statement are not binding on the Internal Revenue Service or the courts. The Debtor makes no representation or warranty regarding whether the Plan as proposed will have any adverse tax consequences on any Creditors or holders of Interests. The Debtor does not believe that the Plan will have any adverse tax impact on it. However, in the event that the Debtor's Plan results in tax liability to the Reorganized Debtor, this liability shall be paid in full in accordance with the Bankruptcy Code priority scheme. The Debtor anticipates that the Plan will generate sufficient Cash to pay any unanticipated tax liability resulting from the Plan.

### VIII

### RISK FACTORS

The Plan has several risk factors. Primarily, the Debtor may not be able to sell or refinance the Real Property when the MSD Secured Claim comes fully due and payable in five years. Moreover, the Plan depends upon Robb & Stucky's ability to continue to pay rent over the next several years. However, even if Robb & Stucky defaults under the Robb & Stucky Lease, the Real Property can either be re-leased or sold to satisfy creditors. The Debtor believes

1    that these risks are minimal and should not be impediments to confirmation of the Plan.

2                                    **VII.**

3                          **ALTERNATIVES TO THE PLAN**

4           If the Plan is not confirmed, several different events could occur: (1) the Debtor could

5    propose another plan providing for different treatment of certain Creditors; (2) MSD, the only

6    Secured Creditor, could move forward to foreclose its lien against the Real Property if the

7    Debtor cannot confirm an alternative plan in a reasonable period of time; or (3) the Bankruptcy

8    Court (after appropriate notice and hearing) could dismiss the Debtor's Bankruptcy Case or

9    convert the Debtor's Bankruptcy Case to a case under Chapter 7 if the Debtor is unable to

10   confirm an alternative plan in a reasonable period of time. In all likelihood, if MSD is allowed to

11   foreclose its lien or the case is converted to Chapter 7, Unsecured Creditors and holders of

12   Interests would receive nothing.

13                                   **IX.**

14                     **RECOMMENDATION AND CONCLUSION**

15          The Debtor believes that the Plan provides the best available alternative for maximizing

16   the recoveries that holders of Claims and Interests will receive from the Debtor's Estate.

17   Therefore, the Debtor recommends that all Creditors that are entitled to vote on the Plan vote

18   to accept the Plan.

19

20                  **DATED** this 18th day of August, 2010.

21

22                            **C&H ARIZONA-STUCKY, LLC**
                              an Arizona liability company,

23

                              By: */s/ Sonja Bowling*
24                            Its: Authorized Agent

25

26

27

28                            Page 26 of 26